CHARLES A. GRIMES *vs.* MARY B. GRIMES.

JUNE 30, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J. This petition for absolute divorce, based upon the ground of extreme cruelty, was tried before a justice of the superior court who rendered a decision for the petitioner. The case is before us on the respondent's exception to this decision.

It appears in evidence that the parties were married April 27, 1921. After living together for several years, they separated and a petition for divorce on the ground of extreme

cruelty was filed by this petitioner in 1924. That petition was discontinued and the parties were reconciled in 1927. They separated later and the petitioner filed another petition on the same ground. The second petition was also discontinued, when the parties became reconciled in 1934. In August 1937, the third or present petition was filed.

The evidence discloses that both parties are well educated and talented, being versatile, industrious and of good earning capacities. Each contributed greatly to the success of various enterprises undertaken in common. The petitioner, shortly after the marriage, became afflicted with paralysis which resulted in certain physical infirmities not connected with the alleged cruelty. Notwithstanding such misfortune and handicap he has displayed admirable courage and succeeded in overcoming them in so far as industry and earning power is concerned. The evidence shows that, when walking, he is not very stable and frequently trips and falls, and usually requires the aid of a cane; that each party is nervous and hypersensitive, though perhaps from different causes; that neither apparently cared much for certain members of the other's family, each making this disapproval known to the other, on occasions, in no uncertain language; and that sharp, provocative and uncharitable observations by both in this regard apparently caused many of the personal quarrels and difficulties here involved.

There is also evidence that each indulged in some isolated acts of physical violence toward the other previous to the last reconciliation; and that there were disputes and exhibitions of temper and intolerance happening at various times over a period of years. On these occasions one or the other by word or act would provoke the arguments, but both almost always would spiritedly participate.

There was also evidence from disinterested witnesses which corroborated the petitioner in certain matters but did not corroborate him in some of his major charges of physical cruelty. On the other hand, the respondent was

corroborated by disinterested witnesses in certain particulars, and there was also a conflict of testimony on other important facts. It is neither necessary nor desirable to elaborate the evidence concerning the petitioner's unfortunate disabilities, or to rehearse all of the details of the charges and counter charges of the parties which appear in the voluminous transcript.

Summarized, the petitioner contends that the evidence establishes, since the last reconciliation in 1934, a willful, persistent and malicious course of cruel conduct toward him on the part of the respondent, that impaired his health and threatened further injury thereto; that, if this evidence is not sufficient, of itself, to support a charge of extreme cruelty, it nevertheless is enough to avoid the respondent's defense of condonation, because less evidence is required for such purpose than to support a charge of extreme cruelty, relying on *Grant* v. *Grant*, 44 R. I. 169, *Mason* v. *Mason*, 46 R. I. 43, and *Egidi* v. *Egidi*, 37 R. I. 481; and that, considering the evidence before and after the last reconciliation, it is sufficient to prove his allegation of extreme cruelty and to justify the trial court's decision in his favor.

The respondent, on the other hand, contends that the evidence does not show any physical cruelty or violence since the last reconciliation in 1934 and is not sufficient otherwise to avoid the defense of condonation; that the entire evidence from the date of the marriage to the trial at most proves isolated incidents happening many years apart and several years previous to the last reconciliation; and does not prove any such persistent course of cruel conduct as required to sustain a divorce on the ground of extreme cruelty; and that many of the above incidents relied upon by the petitioner never took place, while others were entirely different in actuality and effect.

The trial justice's decision for the petitioner is brief and gives little or no discussion of the evidence, the weight thereof, or the credibility of the witnesses, which led him to his

conclusion. The question here is whether the decision of the trial justice was clearly wrong, or whether his decision reasonably responds to the real merits of the controversy on the evidence and does substantial justice between the parties.

Assuming, as alleged by the petitioner, that the evidence of the respondent's conduct in the nature of cruelty other than physical violence was sufficient to avoid the respondent's defense of condonation, and further assuming that the petitioner established, on all of the evidence, that the respondent had pursued a willful course of conduct toward the petitioner, which amounted to extreme cruelty, the petitioner had the burden of proving more, in order to prevail. Unless the evidence, in a petition for divorce brought upon the ground of extreme cruelty, shows that such conduct resulted or inevitably would result in injury to the petitioner's health, the petitioner is not entitled to a divorce. *Bastien* v. *Bastien,* 57 R. I. 176; *Tremblay* v. *Tremblay,* 59 R. I. 401, 195 A. 596.

But the evidence here does not show any real injury to the petitioner or his health, traceable to the alleged cruelty. His physical infirmity was independent of the cruelty, and resulted from another cause. There is no evidence of physical injury or loss of time from employment or of earning capacity, weight or sleep. Although the petitioner was attended for his condition and was examined by local physicians at various times over the years, and although other local physicians appeared as witnesses in the case, none of them gave any testimony proving any actual increased injury or effect upon the petitioner's health that resulted from the alleged cruelty of the respondent.

There was some hearsay testimony by the petitioner that some physician said he was surprised at the change in his condition over what it was two years previously; but this physician was not called to testify and, in our opinion, the hearsay testimony does not show sufficiently that such

change was the natural or inevitable result to his health from the respondent's cruelty. The petitioner was apparently being examined and treated then for a condition that was not due to the respondent's conduct.

Moreover, if this were not so, there is further evidence which apparently was overlooked or misconceived by the trial justice. The petitioner's own testimony shows that he provoked some of the arguments, participated in most of the others actively and equally with the respondent, and also admits at least one act of physical violence toward the respondent. The respondent, on the other hand, testified to another serious threat of physical violence which cannot be overlooked and which significantly was not contradicted by the petitioner, when he later testified in rebuttal. Considering the petitioner's testimony and the respondent's uncontradicted testimony, we are of the opinion that the petitioner has not established by convincing, affirmative proof that he is *without fault* and that the respondent violated the marriage covenant by acts and conduct amounting to extreme cruelty.

In *Hurvitz* v. *Hurvitz,* 44 R. I. 478 the court sustained the respondent's exception to a decision for the petitioner on extreme cruelty and cited with approval the statement of the court in *McLaughlin* v. *McLaughlin,* 44 R. I. 429 that "The state will permit a divorce to be granted only upon affirmative convincing evidence that the petitioner is without fault and that the respondent has been guilty of an offense which is in violation of the marriage covenant." In *Standish* v. *Standish,* 48 R. I. 179, at 183, this court said "the petitioner was not entitled to relief because he did not come into court with clean hands." In a recent opinion by this court, *Salvatore* v. *Salvatore,* 61 R. I. 109, the exception of the petitioner was sustained to a decision for the respondent on his cross-petition, based on the ground of extreme cruelty, where the evidence showed provocation or conduct

by the respondent (cross-petitioner) that did not affirmatively prove him to be *without fault.*

Applying the rule recognized and followed in the above cases, we are of the opinion that, even if the defense of condonation were avoided and extreme cruelty were established by all of the evidence, the petitioner has failed to establish by affirmative, convincing evidence that he is without fault. Under such circumstances he is not permitted to prevail on his petition for a divorce, based upon the ground of extreme cruelty. The respondent's exception is sustained.

On July 11, 1938, the petitioner may appear before this court, if he shall see fit, and show cause, if any he has, why this case should not be remitted to the superior court with direction to dismiss the petition.

*McKiernan, McElroy & Going, Peter W. McKiernan, John S. McKiernan,* for petitioner.

*Justine P. McCarthy,* for respondent.